# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5614 | **DATE** | 5/16/2001 |
| **CASE TITLE** | Frederick Burton vs. Michael Sheahan | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Sheahan's cross-motion for summary judgment (17-1) is granted. Burton's cross-motion for summary judgment (18-1) is denied, and judgment is entered in favor of Sheahan and against Burton. The trial date of August 6, 2001 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | MAY 22 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 79 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 MAY 21 AM 9:01 | 5/18/2001 date mailed notice | |
| | GL courtroom deputy's initials | Date/time received in central Clerk's Office | GL mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FREDERICK BURTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 98 C 5614 |
| ) | |
| MICHAEL SHEAHAN, ) | |
| Sheriff of Cook County, ) | |
| ) | |
| Defendant. ) | |

DOCKETED
MAY 22 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Frederick Burton ("Burton") has filed a one-count complaint asserting a due process claim under 42 U.S.C. § 1983 against defendant Michael Sheahan ("Sheahan") in his official capacity as Sheriff of Cook County based on events surrounding Burton's suspension as a correctional officer. Before the court are cross-motions for summary judgment.

1. **Factual Background**

The following facts are undisputed unless otherwise noted. In February of 1994, Sheahan hired Burton as a correctional officer with the Cook County Department of Corrections. Pursuant to Illinois statute, 55 ILCS 5/3-7008, Burton was on probationary status for the first twelve months of employment and could be discharged at will. Thereafter, he could only be "removed, demoted or suspended [] for cause, upon written charges with the [Cook County Sheriff's Merit] Board by the Sheriff." 55 ILCS 5/3-7012.

In September of 1995, Sheahan accused Burton of working on a computer terminal at the jail without permission and posting money orders to the trust accounts of two inmates. During Sheahan's initial investigation, Burton admitted that he had been using the computer on the day the deposits had been entered but denied any suggestion that he was intentionally trying to

benefit from the activity, claiming that he lacked the computer expertise to create any false computer records.

On September 7, 1995, Burton was given a preliminary hearing on the charges before a three-member board known as the Loudermill Hearing Board. The Loudermill Board sustained the charges against Burton but recommended that he be allowed to work with pay pending his final hearing before the Merit Board. Sheahan chose not to follow the recommendation of the Board, suspended Burton without pay, and filed charges with the Merit Board. Although the Merit Board set an initial hearing date for October 25, 1995, the actual hearing did not take place until October 23, 1996, and November 12, 1996—more than a year after the charges were initially filed. While Sheahan asserts that the case was continued eleven times at Burton's request, Burton maintains that he was always ready to go.

The Merit Board issued its decision on March, 17, 1997, approximately four months after the evidentiary trial and approximately eighteen months after the original charges were filed. The Board's decision was set forth in a two-page ruling in which it found that Burton had improperly, though "inadvertently," accessed the inmate trust accounts on the computer. The ruling reads, in pertinent part:

> Respondent on May 1, 1995 without permission was using a computer terminal at Cook County Jail and inadvertently accessed two inmate trust accounts, in violation of Department of Corrections General Order 4. III Rule 17 and Merit Board Rules Art. X B (3);
>
> WHEREFORE, IT IS HEREBY ORDERED that Frederick Burton [] is suspended from employment for a period of 120 days.

Both parties agree that this ruling was a mixed verdict. On the one hand, the Merit Board rejected Sheahan's argument that Burton was trying to profit from his work on the computer; on the other hand, the Board agreed with Sheahan that Burton had violated two Cook County

2

department rules by accessing a jail computer without permission. Therefore, rather than terminating Burton as Sheahan had originally requested, the Board suspended him for 120 days.

Although the record is not entirely clear, it appears that Sheahan allowed Burton to return to work immediately after the ruling, apparently taking the position that, due to Burton's pre-hearing suspension, Burton had in effect already served his 120-day suspension. As noted above, the Merit Board's ruling merely states that Burton "is suspended from employment for a period of 120 days." The ruling is silent on the question of when the suspension should be served or how to treat the pre-hearing suspension period.

Burton chose not to exercise his right to appeal the Merit Board's decision to the Circuit Court of Cook County. Sometime after the Merit Board's ruling, Burton's attorney from the Merit Board hearing, Lawrence Vance, spoke with James Ryan, Sheahan's legal counsel, about the issue of backpay. Ryan explained to Vance that Sheahan had a policy regarding backpay, which was:

> With regard to correctional officers who were suspended without pay pending resolution of their Merit Board cases – the Sheriff presently acts as follows depending on the result: (A) In cases where a correctional officer was totally vindicated, the Sheriff pays that person full backpay for the entire time of their suspension. This amount includes any and all time the proceedings were delayed regardless of who it was attributable to. (B) In cases where a correctional officer is suspended but not terminated, the Sheriff deducts the suspension and the time of delays in the proceedings which can be attributed to the correctional officer; and (C) Finally, where the correctional officer is found guilty and terminated, he does not receive any backpay.

With regard to the policy of deducting pay for delays caused by the officer, Ryan explained to Vance that this policy was based on unpublished Illinois appellate court decision *Washington v. O'Grady*, No. 1-92-4432, June 30, 1994. Because Sheahan believed that Burton was responsible for much of the delay in this case, he offered only $11,622.24 in backpay in return for a

3

complete release. Vance orally agreed to this settlement, and Ryan mailed Vance a "Release of Claims," which set forth the terms of the settlement.

Burton now argues that because he had discharged Vance the day after the Merit Board issued its decision, Vance was no longer representing him during the backpay negotiations. Burton acknowledges that Vance did send him a copy of the Release and that he was aware of Sheahan's willingness to pay some amount of backpay. Burton says that Sheahan's offer of $11,622.24 was far short of the full amount of backpay, which Burton believes should be approximately $40,000.

**2. Analysis**

Burton was suspended without pay for approximately fourteen months over and above the suspension actually prescribed by the Merit Board. In addition, Burton lost fourteen months worth of seniority credit. Burton is not directly complaining about Sheahan's initial decision to suspend him without pay, as it was possible that the Merit Board would later conclude that Burton should be terminated rather than just suspended, thus justifying any pre-hearing suspension.[1] Further, Burton is complaining neither about the length of time it took for his case to be resolved, nor is he directly attacking the Merit Board's ruling that he violated certain departmental rules and should be punished with a 120 day suspension without pay. Rather, Burton complains about Sheahan's refusal to provide him backpay and restore his job seniority to rectify the fourteen-month suspension which—in hindsight—was allegedly unjustified. Burton believes that it is incumbent upon Sheahan to provide such a remedy because the Illinois

---

[1] In several places in his moving papers, Burton does indirectly criticize the adequacy of this initial hearing; however, because Burton neither included this charge in his complaint, nor amended his complaint, the court will not entertain this challenge.

4

legal system provides no procedural mechanism for obtaining backpay in this type of situation.

Sheahan's refusal to pay backpay was made pursuant to an official policy, which Burton believes unconstitutional. Initially, Burton described this policy as an absolute refusal to pay *any* backpay in a situation in which an officer is suspended without pay pending a termination hearing but is later suspended for an amount of time less than the pre-hearing suspension already served. Such a policy, according to Burton, is unconstitutional because it allows Sheahan to impose an additional punishment for a violation of department rules—a punishment that is imposed outside the protective due process administrative framework that includes a full evidentiary hearing before the Merit Board. Discovery revealed that Sheahan's policy is not quite as absolute as Burton claimed. Instead of a blanket refusal to pay any backpay, the policy in fact is generally to pay backpay where a correctional officer is suspended but not terminated, but to deduct from that total (i) any pay relating to delays in the proceedings which can be attributed to the correctional officer and (ii) any pay attributed to the actual suspension imposed by the Merit Board—here, 120 days. Thus, in contrast to the policy as described by Burton, which arguably allows Sheahan to punish an officer a second time for the original infraction adjudicated by the Merit Board, the actual policy applied by Sheahan imposes a punishment based on a different rationale. It disallows backpay for delays attributable to the correctional officer on the theory that the officer should not be rewarded for unnecessarily dragging out the proceedings against him.

Regardless, Burton maintains that the policy, even as restated, is unconstitutional and unfair because it is inconsistent with the policy applied to officers who are initially suspended without pay but who are then exonerated by the Merit Board. In such cases, it is undisputed that Sheahan's policy is to provide for complete backpay and to not deduct any pay for delays

5

attributable to the correctional officer. Burton feels he should receive the same remedy given those officers. In addition, Burton disputes Sheahan's conclusion that he was responsible for those delays attributed to him. He says that he was always ready to go, and in fact made this point clear at the numerous status hearings leading up to the hearing.

In its previous opinion, *see Burton v. Sheahan*, 68 F.Supp.2d 974 (N.D. Ill. 1999), this court concluded that Burton was entitled only to assert a procedural due process claim. As articulated by Judge Grady in *Miller v. Fairman*, 872 F.Supp. 498, 502 (N.D. Ill. 1994), "[p]rocedural due process imposes a requirement of fair procedure for state actions no matter how proper those actions otherwise may be; it is 'fundamentally different' from substantive due process, which forbids certain kinds of state actions no matter the fairness of the procedures used to implement them." In his moving papers, Burton largely disregards this distinction between substantive and procedural due process, making substantive due process claims by repeatedly arguing that Sheahan's policy regarding backpay is unfair and overly punitive, or that it is inconsistent with the policy applied to correctional officers exonerated by the Merit Board. The court will not address these arguments. *See Burton*, 68 F.Supp.2d at 981.

The sole question before this court is accordingly whether Burton was provided an adequate procedural mechanism for challenging the deprivation of his property—in this case, his salary for the fourteen-month period at issue.[2] *Id.* Burton argues that even if there was a

---

[2] In its previous opinion, this court noted that Burton's salary qualified as a constitutionally-protected property interest, thus implicating federal due process protections. The court so concluded based upon the fact that Burton was an employee dismissable for cause, and that "a deprivation of constitutional dimensions occurs when the state stops the flow of benefits associated with a protected interest for any appreciable length of time." *Id.* at 981 (quoting *D'Acquisto v. Washington*, 640 F.Supp. 594, 609 (N.D. Ill. 1986)). The court will continue to proceed on this assumption despite the fact that this question is one that has not been resolved by the Supreme Court. *See Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997) ("Although

6

procedural mechanism available to him, he was not required to utilize it because that would be tantamount to a requirement that he exhaust administrative remedies before bringing a § 1983 action, something he believes the Supreme Court rejected in *Patsy v. Bd. of Regents of Florida*, 457 U.S. 496, 516 (1982) ("exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983"). We reject this argument for the same reasons articulated by the Third Circuit in *Alvin v. Suzuki*, 227 F.3d 107 (3rd Cir. 2000):

> In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate. "[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir.1982); *see also Bohn v. County of Dakota*, 772 F.2d 1433, 1441 (8th Cir.1985). A due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants. *See McDaniels v. Flick*, 59 F.3d 446, 460 (3d Cir.1995); *Dwyer v. Regan*, 777 F.2d 825, 834-35 (2d Cir.1985), *modified on other grounds*, 793 F.2d 457 (2d Cir.1986); *Riggins v. Board of Regents*, 790 F.2d 707, 711-12 (8th Cir.1986).
>
> This requirement is to be distinguished from exhaustion requirements that exist in other contexts. [Plaintiff] appears to conflate the two, and contends, as an alternative to his claim that he attempted to use the available procedures, that he need not go through the processes available because of the general rule there is no exhaustion requirement for 42 U.S.C. S 1983 claims. *See Patsy v. Board of Regents of Florida*, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Hohe v. Casey*, 956 F.2d 399, 408 (3d Cir.1992). However, exhaustion simpliciter is analytically distinct from the requirement that the harm alleged has occurred. Under the jurisprudence, a procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies. *See Zinermon*, 494 U.S. at 126, 110 S.Ct. 975.

---

we have previously held that public employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process [citations omitted], we have not had occasion to decide whether the protections of the Due Process Clause extend to discipline of tenured public employees short of termination.").

7

*Id.* at 116.

Burton has two procedural complaints. First, he argues that the Illinois administrative framework is "deficient" in failing to provide a way to raise a backpay claim. Second, Burton objects to the decision Sheahan made after the administrative process ended. Although Burton places most of his emphasis on the latter point, the court will address both contentions.

First, Burton claims that he could not have raised his backpay claim either with the Merit Board or in a subsequent appeal to the Illinois circuit court. He reasons that the statute authorizing the Merit Board to hear and decide disciplinary complaints filed by the Sheriff does not vest the Board with jurisdiction to award backpay or to restore seniority. Burton further contends that the Illinois Administrative Review Act, pursuant to which the state court reviews Merit Board decisions, does not vest the circuit court with jurisdiction to order backpay.

Sheahan does not take a position regarding Burton's assertion that neither the Merit Board nor the circuit court had the authority to award backpay. Instead, Sheahan asserts that Burton could have filed a subsequent legal action raising his backpay claim. In other words, even if Burton was prevented from raising a backpay claim initially as part of the administrative process, he was not denied procedural due process because he still had a legal remedy. Burton replies that any remedy in the form of a separate legal action would be too attenuated to satisfy constitutional due process requirements. Burton relies on *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), in which the Supreme Court set forth a two-part due process framework to be used when terminating a public employee dismissable only for cause. In *Loudermill*, the Court concluded that there should be a "very limited hearing" prior to termination, "to be followed by a more comprehensive post-termination hearing." *Gilbert v. Homar*, 520 U.S. 924, 929 (1997) (summarizing *Loudermill*). It is undisputed that the process applied in this case—an

8

initial hearing before the Loudermill Board and a comprehensive hearing before the Merit Board—was meant to conform to this framework. Burton thus seems to be arguing that *Loudermill* requires that he be allowed to raise his backpay claim in the post-deprivation hearing—the Merit Board hearing—rather than at some later point via an independent legal action. *See Loudermill*, 470 U.S. at 547 ("Our holding rests in part on the provisions [] for a full post-termination hearing.").

The court has its doubts as to whether a later legal action would be too remote and accordingly somehow violate the *Loudermill* framework. But even accepting this as true, Burton's argument is unpersuasive for another reason—that is, the court is not convinced that Burton in fact was prohibited from raising his claim during the initial administrative process. Burton asserts that the Merit Board has no statutory authority to award backpay. As an initial matter, the court has seen references in the case law to instances where the Merit Board in fact did award backpay. *See, e.g., Hunt v. Fairman*, 1998 WL 102566, *2 (N.D. Ill. Feb. 24, 1998) (after dismissing charges against correctional officer, Merit Board "reinstated [the officer] with full backpay and seniority rights"). Regardless, Burton has failed to clearly demonstrate, statutorily, why the Merit Board lacks jurisdiction.

Burton is correct inasmuch as the relevant statute does not explicitly grant the Merit Board the authority to award backpay, but this overlooks the fact that Burton is really complaining about an unjustified suspension, for which backpay is merely the remedy. There is no question that the Merit Board has the authority to determine whether a suspension was "with cause." 55 ILCS 5/3-7012. And the Merit Board may not suspend an officer for more than 180 days. *See id.* In light of this power, the Merit Board must have the authority to award backpay if it finds that plaintiff had been suspended without cause for some period of time. *See County of*

9

*Cook v. Illinois Local Labor Relations Bd.*, 707 N.E.2d 176, 179 (Ill. App. Ct. 1998) (though administrative agencies have power only by statute, "[a]n express grant of power to an administrative body [] includes the authority to do all that is reasonably necessary to execute that power"); *see also Kropel v. Conlisk*, 322 N.E.2d 793, 798 (Ill. 1975) ("If the board does not approve the suspension, it shall enter appropriate orders to place the plaintiff in the same position had the suspension not been levied in the first instance."); *Hoban v. Rochford*, 392 N.E.2d 88, 94 (Ill. App. Ct. 1979) ("it is implicit in the statute that any disciplinary action found on review to have been inappropriate should be corrected with monetary recompense and modification of the employee's records").

Burton apparently never raised this argument with the Merit Board, likely because Burton did not anticipate that the Board would issue a suspension without taking into account the fact that he had already been suspended for some time prior to the ruling. But even if true, Burton still was not without options, as he could have appealed the Merit Board's ruling and then raised this point. In particular, he could have followed the approach taken by the plaintiff in *Mitchem v. Cook County Sherif's Merit Board*, 554 N.E.2d 331 (Ill. App. Ct. 1990), in which the plaintiff, like Burton, was suspended without pay pending a Merit Board ruling. The Merit Board suspended Mitchem for 180 days in a ruling that did not seem to recognize or take into account the fact Mitchem had already been suspended without pay prior to the hearing. Unlike Burton, however, Mitchem filed a complaint for administrative review, arguing that he had effectively been suspended for more than the 180-day statutory suspension limit. The trial court agreed, concluding that Mitchem should be granted backpay to account for the "days of prehearing suspension served in excess of" the actual suspension imposed by the Merit Board. *Id.* at 332. The Illinois appellate court agreed with this analysis. However, it concluded that the

trial court, rather than awarding backpay in the first instance, should have instead remanded the case back to the Merit Board "for the taking of additional evidence related to backpay and related benefits." *Id.* at 335. In sum, *Mitchem* casts doubt on Burton's claim that the Illinois administrative framework is "defective."[3]

Second, Burton criticizes Sheahan's decision not to pay backpay or to restore seniority. It is perhaps unnecessary to analyze this argument since the court believes itself to be correct in its determination that Burton could have raised his backpay claim either with the Merit Board or with the Illinois circuit court on review, which would of course render meaningless Sheahan's unwillingness to provide backpay. Viewed another way, however, Sheahan's decision could constitute a "new" deprivation, given that it rests on a rationale different from that underlying the original decision.[4] Because this framework provides a better way of analyzing this case and more accurately reflects what was really happening, the court will treat Sheahan's decision as a new deprivation calling for a separate due process analysis. Under this framework, Burton arguably may be able to state a procedural due process claim even if he *could* have previously raised the issue of backpay with the Merit Board. However, for the reasons explained below, the

---

[3] Relying on *Drezner v. Civil Service Comm.*, 75 N.E.2d 303, 309-10 (Ill. 1947), Burton argues that the Illinois circuit court does not have jurisdiction to award backpay and is limited to reviewing the record of the administrative agency. Burton misconstrues the holding of *Drezner*, which merely stands for the proposition that the circuit court should not award backpay on its own when there is no "support in the record," but that it should instead "remand the case to the administrative agency for the taking of additional evidence relating to back pay and related benefits." *Sola v. Clifford*, 329 N.E.2d 869, 873 (Ill. App. Ct. 1975); *Mitchem*, 554 N.E.2d at 335.

[4] As noted above, when Sheahan initially ordered that Burton be suspended without pay, it was because Burton had allegedly violated certain departmental rules that could lead to a punishment of termination. After the Merit Board issued its ruling, a new rationale emerged—namely, that Burton should not be paid for delays he caused in the administrative process.

court still finds that Burton has failed to make out a viable procedural due process claim.

After the Merit Board ruled, Sheahan's legal advisor and Burton's (ostensible) attorney entered into backpay negotiations. Although they thought they had reached a settlement, according to Burton, they did not because Burton had not authorized his attorney to settle his claim.[5] Thereafter, Burton hired a new attorney who then filed this federal action. Burton did not attempt to re-enter into negotiations with Sheahan's office, nor did he file any type of legal action in Illinois court. Sheahan argues that Burton's claim is nothing more than an ordinary wage dispute that easily could have been resolved by filing a complaint in Illinois state court challenging Sheahan's decision. Specifically, Sheahan argues that Burton had a number of options. Burton could have filed a mandamus action, which Illinois courts have recognized as a proper remedy to compel a public official to perform his duty to pay a salary to an employee who is lawfully entitled to it. *See, e.g.*, ***People ex rel. Hilger v. Myers***, 252 N.E.2d 924, 926 (Ill. App. Ct. 1969); ***Chriswell v. Rosewell***, 388 N.E.2d 175, 177 (Ill. App. Ct. 1979) ("[i]t is well established that an officer or employee unlawfully suspended is entitled to recover the salary lost during the period of suspension"). In the alternative, Burton could have pursued a state-court action under the Illinois Wage Payment And Collection Act, 820 ILCS 115/1, *et seq.* (1999), which allows employees to seek redress for an employer's wrongful withholding of employee benefits. Finally, Burton could have filed a declaratory judgment action. *See, e.g.*, ***Fruhling v.***

---

[5]This case is before us on cross-motions for summary judgment. The standards for summary judgment are well known. Summary judgment may be granted when the record contains no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue for trial will be found only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, as Burton agrees, the facts necessary to resolve this case are not in dispute.

*County of Champaign*, 420 N.E.2d 1066, 1069 (Ill. App. Ct. 1981).[6]

In light of the fact that Burton had a post-deprivation process available, it is not clear what else is required. Although Burton repeatedly asserts that Sheahan's decision was wrong, he "has not suggested any additional or substitute procedural safeguards which may have prevented" the wrong. *Toney-El v. Franzen*, 777 F.2d 1224, 1229 (7th Cir. 1985). Burton refers several times to the *Loudermill* framework, which requires a limited pre-deprivation hearing, yet never argues that Sheahan should have conducted a hearing prior to making his decision.

Further, this court does not think that due process demands a pre-deprivation evidentiary hearing in this context. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (due process "is flexible and calls for such procedural protections as the particular situation demands"). It is true that the Supreme Court has sometimes required a pre-deprivation hearing. The most obvious example is job termination, which was at issue in *Loudermill*. However, *Loudermill* does not impose an absolute rule that an evidentiary hearing be given in every case. *See Gilbert*, 520 U.S. at 929-30. Instead, to determine what process is due in a particular situation, the court relies on the three factors set forth by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.[7]

---

[6] In his response brief, Burton fails to distinguish these cases or to otherwise rebut Sheahan's claim that he could have filed a separate legal action in Illinois courts.

[7] The parties disagree as to whether this case fits within the holding of *Parratt v. Taylor*, 451 U.S. 527 (1981), in which the Supreme Court held that in the specific case of a tortious loss

13

Applying this standard, the court does not believe that Sheahan was required to do anything more than he did. As the Court stated in *Mathews*, "the ordinary principle, established by our decisions, [is] that something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Mathews*, 424 U.S. at 343. Burton's property interest at this point consists of partial backpay, an interest less compelling than in many cases. Moreover, at the time Sheahan made the decision not to provide backpay, Burton had returned to work and begun receiving a paycheck. The purpose for any such hearing would be to "assure that there are reasonable grounds to support the suspension without pay." *Gilbert*, 520 U.S. at 933. Here, it is undisputed that Sheahan's policy was based on an Illinois appellate court decision. A hearing also serves to allow a party to explain his case and to learn about the reasons for the action being taken. Here, in his negotiations with Burton's former attorney, Sheahan explained the rationale for his actions and was willing to let Burton tell his side of the story. It is therefore unclear what would have been accomplished in a pre-deprivation hearing, especially when balanced against the cost of such procedures. *Mathews*, 424 U.S. at 348 (although financial cost is not a controlling factor in the analysis, "[a]t some point the benefit of an additional safeguard . . . may be outweighed by the cost.").

Burton had numerous and adequate procedural opportunities available to raise his complaint regarding lost backpay and seniority. He could have raised his claim directly with the Merit Board; he could have filed an appeal and raised the claim with the circuit court, which

---

of a prisoner's property, it would not be practicable to impose a pre-deprivation procedural requirement because the deprivation was the "result of a random and unauthorized act by a state employee." *Id.* at 541. With regard to this particular issue, we agree with plaintiff that this case does not fall within the specific holding of *Parratt*. However, *Parratt* is merely one example of a situation in which a pre-deprivation evidentiary hearing is not required.

14

then could have remanded the matter to the Merit Board; he could have entered into negotiations with Sheahan and attempted to explain why Sheahan was wrong in believing that Burton caused the delays; and, finally, he could have filed any one of a number of separate types of legal actions in Illinois courts. *See **Duncan v. State of Wisc. Dept. of Health and Family Services**,* 166 F.3d 930, 936 (7th Cir. 1999) (plaintiff had "repeated opportunities to communicate his side of the story"—the fact that "he may have found [his employer's] actions unwarranted or offensive is, in the final analysis, a substantive complaint, not a procedural one"). Because Burton chose to ignore these options, he has no procedural due process claim pursuant to § 1983. *See Alvin*, 227 F.3d at 116 ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.").[8]

For the foregoing reasons, Sheahan's cross-motion for summary judgment is **GRANTED**, Burton's cross-motion for summary judgment is **DENIED**, and **JUDGMENT IS ENTERED** in favor of Sheahan and against Burton.

**SO ORDERED.**

Enter: May /6 , 2001

JUDGE, UNITED STATES DISTRICT COURT

---

[8] Having concluded that Burton was given adequate procedural protection, the court declines to address Sheahan's remaining arguments, including his argument that the issue of seniority is controlled by the collective bargaining agreement and that Burton was required to exhaust the grievance/arbitration procedures set forth in that agreement.